[Cite as *DiGiorgio v. DiGiorgio*, 2013-Ohio-807.]

# IN THE COURT OF APPEALS OF OHIO
## SECOND APPELLATE DISTRICT
## GREENE COUNTY

| | | |
|---|---|---|
| JOSEPH DIGIORGIO | : | |
| | : | Appellate Case No. 2012-CA-61 |
| Plaintiff-Appellee | : | |
| | : | Trial Court Case No. 06-DM-141 |
| v. | : | |
| | : | |
| TINA DIGIORGIO | : | (Civil Appeal from |
| | : |  Common Pleas Court) |
| Defendant-Appellant | : | |
| | : | |

. . . . . . . . . . .

O P I N I O N

Rendered on the 8th day of March, 2013.

. . . . . . . . . . .

HERBERT CREECH, Atty. Reg. #0005198, 200 Jamestown Circle, #F, Dayton, Ohio 45458
        Attorney for Plaintiff-Appellee

DON A. LITTLE, Atty. Reg. #0022761, and PAMELA L. PINCHOT, Atty. Reg. #0071648,
Clyo Professional Center, 7960 Clyo Road, Dayton, Ohio 45459
        Attorneys for Defendant-Appellant

. . . . . . . . . . . .

HALL, J.

{¶ 1}    Tina DiGiorgio appeals the domestic relations court's judgment overruling her Civ.R. 60(B) motion for relief from an agreed order that, she argues, improperly eliminates part of the child-support arrearage of her former husband and appellee, Joseph DiGiorgio.

Because Appellant agreed to the essential terms of the order, it is binding and enforceable and Tina failed to demonstrate grounds for relief under Civ.R. 60(B). We affirm.

## I. Background

{¶ 2} In November 2006, the parties' marriage was dissolved by a decree of dissolution. The decree incorporated the parties' separation agreement, in which they agreed that neither of them would pay child support to the other, in part because of a shared parenting arrangement where each parent was to have one of the two children living in their household. The decree of dissolution, and related orders, were filed on November 7, 2006. Among other things, within one year of the filing of the decree, Joseph was to pay Tina $950,000.00 as a lump-sum property settlement. The tortured subsequent proceedings provide background and context for the agreed order filed September 14, 2010, which is at the root of the subject matter of this appeal. Adding to any confusion, we note that as of now, Joseph has had four attorneys and Tina has had at least eight, although hers were from only four different law firms.

{¶ 3} On September 17, 2007, Tina filed her original Civ.R. 60(B) motion for relief from the decree and separation agreement. Among other things, she asserted that her husband had misrepresented that a 24-unit condominium project near Miami Beach, Florida, which had been valued at $3,000,000.00 in the dissolution financial affidavits, was actually worth more than $5,200,000.00. An accountant's affidavit to that effect was submitted in support. Tina also moved the court to grant her child support, spousal support, and termination of the shared parenting arrangement, alleging that both children continued to live with her. Finally, she asked the court to allow her to continue to live in the former marital residence beyond the

rent-free one-year granted to her in the decree. Hearings were set, and continued, on this latter motion, but it was withdrawn by entry filed December 13, 2007. Nonetheless, she continued to live in the former marital residence, which had been awarded to Joseph in the decree. The original 60(B) motion was set for a final hearing on April 21-22, 2008.

{¶ 4} In the meantime, Tina filed a separate Motion to Establish Child Support on January, 10, 2008. A hearing on this motion was set for February 15, 2008. On February 22, 2008, an Agreed Judgment Order and Entry set temporary child support at $1,201.44 per month, but the support was to be paid through Tina's counsel's office and not to the CSEA.

{¶ 5} The April hearing on the original 60(B) motion was continued and reset for June. It was continued again and on June 19, 2008, a notice of hearing was issued "on all pending motions," for August 27, 2008. On the morning of that hearing, Tina filed a Motion to Show cause why Joseph should not be held in contempt for failing to pay the remaining $775,000.00 of the lump-sum property settlement.[1] We do not have a transcript detailing what happened at the August 27th hearing, but the Magistrate's Pretrial Order, filed August 29, 2008, states: "All pending Motions including the 60-B are being withdrawn. A new Motion to Show Cause will be filed." A hearing was set for December 3, 2008.

{¶ 6} Again, in the interim, on September 22, 2008, Tina filed an Motion to have the temporary child support, that had been set in the "Agreed Judgment Order and Entry" filed February 22, 2008, paid through the CSEA. An apparent ex-parte order to that effect was filed at the same time. In response, on October 16, 2008 Joseph filed a Motion to set aside the order

---

[1] This contempt motion is inconsistent with the original 60(B) motion, which challenged the value of the property division in the decree, because the contempt motion sought to enforce the property division in the decree, not to alter it.

requiring support to be paid through the CSEA. In part, the argument raised in Joseph's motion was that "[a]s discussed by counsel with the Court on a number of occasions, a child support figure of fifty thousand dollars ($50,000) was negotiated by the parties in the dissolution and included in the property division * * *." Counsel further argued that the February 22, 2008 agreed temporary support order was entered into upon the belief that the court had indicated, in pretrial conferences, that the $50,000 advance in child support could be accounted for at the final support hearing. But, no final support hearing had ever been conducted because on August 27, 2008, Tina indicated she would withdraw all her pending motions.

{¶ 7} On November 24, 2008, Tina filed a new Motion to Show cause related to Joseph's incurrence of debt in her name and to his failure to pay the temporary child support. On the same date, Joseph filed a Motion to Show cause concerning Tina's failure to vacate the marital residence after one year. These were to be the subject of the December 3, 2008 hearing but nothing appears in the record to indicate that this hearing was ever conducted. However, on December 23, 2008, Joseph filed a Motion to Dismiss asking the court to dismiss the September 17, 2007 60(B) motion, the child support and parenting motions, and to dismiss the January 10, 2008 Motion to Establish Child Support, all for the reason that Tina had indicated that she was withdrawing those motions at the time of the hearing scheduled for the August 27, 2008, but she had never formally filed any withdrawal of these motions on the docket.

{¶ 8} Apparently as a result of a telephone pretrial conference January 27, 2009, the hearing on pending motions was re-set for March 2, 2009. On February 10, 2009, Tina filed a Motion for Increase of Child Support. The magistrate's Decision and Order filed March 6,

2009, reflects that the March 2, 2009 hearing was conducted on the two motions to show cause and the "Motion for Increase of Child Support which was filed on February 10, 2009 *and orally amended at hearing to be a Motion to Establish child support * * *. "* (emphasis added). Eventually, the child support issue was continued to allow the filing of current financial affidavits. After the filing of affidavits, a Magistrate's Interim Order was filed on May 19, 2009 setting support at $1,044.56 per month, effective June 1, 2009. A final hearing was scheduled for August 12, 2009. Again, however, it appears the final support matter was continued while the parties skirmished over enforcement of the lump sum payment, which had been reduced to a $ 735,000.00 money judgment on June 16, 2009, and vacation of the former marital residence where Tina was still living.

**{¶ 9}** The context we have just provided reveals that the issues of payment of the property settlement, child support and occupancy of the former marital residence had been intertwined for almost four years when the critical hearing was conducted on June 11, 2010. At that time, it was stated: "We are here based on three motions. Two show cause motions that were filed, one by plaintiff, one by defendant; and a motion that's been pending for quite some time for the establishment of a permanent order of child support." (T. at 2) The magistrate noted that the parties had reached an agreement, and the agreement was read into the record. On September, 14, 2010, an agreed order was filed with signatures of both the Judge and Magistrate. One provision in the agreed order withdraws all pending motions. Another provision vacates any child-support order entered before June 1, 2009, and eliminates any arrearage before that date. Neither Tina nor her trial attorney signed the agreed order.

Instead, Tina filed a Civ.R. 60(B) motion to set it aside.[2] She attached an affidavit to a subsequently filed memorandum in support. After a mistake-of-fact hearing, the magistrate's decision and order overruled Tina's Civ.R. 60(B) motion. She filed objections with the domestic relations court. Based on the transcript of the June 2010 hearing, the court overruled her objections and adopted the magistrate's decision and order.

{¶ 10}　Tina appealed.

## II. Review of the Alleged Error

{¶ 11}　The sole assignment of error alleges that the domestic relations court erred by overruling Tina's Civ.R. 60(B) motion for relief from the September 14, 2010 agreed order. To obtain relief under Civ.R. 60(B), a timely motion for relief must be made and "[t]he moving party must demonstrate that he or she * * * has a meritorious defense or claim to present if the relief is granted * * * [and] is entitled to relief under one of the grounds stated in Civ.R. 60(B)(1) through (5) * * *." *GTE Automatic Elec., Inc. v. ARC Industries, Inc.*, 47 Ohio St.2d 146, 351 N.E.2d 113 (1976), paragraph two of the syllabus. Here, there is no question that the motion for relief was filed timely. Moreover, if the court's entry substantially and materially varied the agreement of the parties, Tina would have a meritorious claim to prove existence of an enforceable support order, and arrearage, which she says she did not relinquish. Given the course of proceedings that we have outlined, we question whether she would have been successful in that claim, but we accept that she could have presented it.

---

[2]　The September 29, 2010 motion was entitled as a "Motion to set aside Agreed Entry." However, in a memorandum in support, filed on January 18, 2011, Tina's new counsel stated that the motion "was, in reality, a motion for relief from judgment pursuant to Civil Rule 60(B)(1) and (5)." Memorandum at 2.

**{¶ 12}** "A motion for relief from judgment under Civ. R. 60(B) is addressed to the sound discretion of the trial court, and that court's ruling will not be disturbed on appeal absent a showing of abuse of discretion." *Griffey v. Rajan*, 33 Ohio St.3d 75, 77, 514 N.E.2d 1122 (1987). An abuse of discretion occurs when the trial court's decision is unreasonable, arbitrary, or unconscionable. *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219, 450 N.E.2d 1140 (1983). We also note that Civ.R. 60(B)(5) will apply only when one of the specific provisions enumerated in Civ.R. 60(B)(1)-(4) does not apply. *Strack v. Pelton*, 70 Ohio St.3d 172, 174, 637 N.E.2d 914 (1994) *citing Caruso–Ciresi, Inc. v. Lohman*, 5 Ohio St.3d 64, 448 N.E.2d 1365 (1983). We have previously analyzed a challenge of a judgment entry, that substantially and materially varies the parties' agreement, as a motion for relief from judgment based on the ground of mistake under Civ. R. 60(B)(1). *Roemmich v. Roemmich*, 2nd Dist., Greene No. 07CA99, 2008-Ohio-6047, ¶'s 7 & 12. We also do so here. We conclude the domestic relations court here did not err by denying Tina relief. The agreed order is binding and enforceable–it does not need Tina's signature and it is consistent with the material terms of the agreement read into the record. Tina has failed to demonstrate a ground for relief under Civ. R. 60(B).

**{¶ 13}** Tina did not need to sign the agreed order for it to be enforceable. "An in-court settlement agreement may be adopted by the court, incorporated into judgment entry, and enforced even in the absence of written approval by one party." (Citations omitted.) *Gulling v. Gulling*, 70 Ohio App.3d 410, 412, 591 N.E.2d 349 (9th Dist.1990). Here the magistrate, perhaps because of the extensive history we have outlined, specifically warned Tina that it would enter an order based on the agreement that was read into the record with or

without her signature:

> THE COURT: * * * Mr. And Mrs. Digorgio, please listen very carefully to what is read into the record today. You are under sworn testimony. After you leave here I'm going to file an agreed entry that comes in with or without your signatures as long as it matches what is read into the record today.
>
> Okay. This is your agreement. The only way of changing it is going to be by some subsequent Court motion that may or may not be granted.
>
> Both of you need to understand that * * *.
>
> * * *
>
> THE COURT: Okay. So then understand, what is read into the record today is your agreement, okay?
>
> MR. DIGORGIO: Okay.
>
> THE COURT: Do you understand that?
>
> MRS. DIGORGIO: Yes, ma'am.

(June 11, 2010 Hearing Tr. 4-5).

{¶ 14} The two pertinent provisions of the agreed order provide: "1. All Motions before the Court are hereby WITHDRAWN[]" and "2. Any Child Support Order(s) put on the record after the Final Judgment Decree of Dissolution filed November 7, 2006 up to June 1, 2009 is hereby VACATED and said support and/or support arrearage during this period of time shall be set at zero ($0.00)." (Emphasis sic.). These provisions accurately reflect the parties' agreement at the hearing. Near the beginning of the hearing, the parties' attorneys told the magistrate that they had "reached an agreement as to all issues" (which included the

voluntary withdrawal of the show-cause contempt motions that each party had filed). (June 11, 2010 Hearing Tr. 2). Joseph's attorney (Mr. Slicer), Tina's attorney (Mr. Ebersole), and the magistrate then agreed that the order should state that all pending motions are withdrawn:

>MR. SLICER: If it's okay with the Court, I'll just put in there that all motions and contempts filed by both parties are withdrawn at this point.

>THE COURT: Just all motions pending before the Court other than the child support are withdrawn.

>MR. SLICER: Yeah, and I'll just put the child support language in there.

>THE COURT: Okay.

>MR. SLICER: The modifications at least.

>THE COURT: Okay.

>MR. EBERSOLE: And that includes the motion for the (unintelligible).

>THE COURT: Yes. So let's just do everything that's pending.

>MR. SLICER: Yeah. I'll just–do you want me to point to each one of them or just put a blanket–

>THE COURT: Put a blanket in there is fine.

(*Id*. at 3). Then they discussed their agreement to eliminate the child-support arrearage:

>MR. SLICER: * * * There is also further agreement that any arrearage created by any Court order prior to June 1st of 2009, should be vacated because it was based on a 60(B) which was voluntarily dismissed before, either creating a credit or just setting that arrearage at zero somehow, and I'll take that up with the SEA.

>THE COURT: Okay. And it shouldn't be a credit, I wouldn't think.

MR. SLICER: Set it at zero.

THE COURT: It goes both ways. If we're saying that nothing existed--

MR. SLICER: Right.

THE COURT: –because the order was withdrawn, there's no credit for arrearage. You can't have it both ways.

(*Id.* at 6).

**{¶ 15}** Tina's asserted grounds for relief alleged mistakes of fact by her and her trial attorney. In her affidavit, Tina avers the following: "1. On June 11, 2010, when I appeared in court, I was not aware that when I agreed to dismiss all pending motions concerning child support that also being vacated was an agreed order of February 22, 2008, which had me waiving all child support for over a two year period of time;[3] 2. This was not adequately explained to me by counsel." Tina says that she agreed to the arrearage-elimination provision because she believed that only pending motions would be withdrawn. She says that her attorney failed to adequately explain that the February 2008 child-support order would be vacated. Tina concedes that her attorney agreed to the arrearage-elimination and order-vacation provisions. But she points out that he was new to the case and mistakenly thought that the 2008 child-support order had been withdrawn already. (June 11, 2010 Hearing Tr. 7) (At the hearing, Tina's attorney said, "I think when they dropped the 60(B) motion they also withdrew that child support order at the same time."). In fact, she says, the record does not show that the 2008 child-support order had been withdrawn or vacated. If her attorney had

---

[3] Actually, at best, the period of time would only have been from February 22, 2008 until June 1, 2009, a period of about 15 months.

adequately explained the agreement to her or if he had known that the order was still in effect, Tina contends, she would not have agreed to eliminate the child-support arrearage prior to June 1, 2009.

{¶ 16} It is not entirely clear from the record what happened to the 2008 child-support order. While it was not explicitly vacated, its implicit evaporation must be presumed in light of: 1) the magistrate's pretrial order of August  29, 2008, reflecting that all pending motions were to be withdrawn; 2) the magistrate's Decision and Order filed March 6, 2009, which demonstrates that Tina orally amended her February 10, 2009 motion for an increase in support to a motion to establish support;[4] and 3) the May 19, 2009 Magistrate's Interim Order, which set an amount of "temporary child support."[5] Although the parties' agreement, as it appears in the June 11, 2010 transcript, does not explicitly call for the 2008 child-support order to be vacated, the parties clearly and explicitly agreed that any support arrearage before June,1, 2009 was to be eliminated. With an agreed zero arrearage as of June 1, 2009, any lingering effectiveness of the February 22, 2008 temporary order was extinguished. This was expressly pointed out to Tina by the magistrate. Immediately following the above-quoted arrearage discussion, the magistrate addressed the parties directly, saying, "So it's just like it [any previous child-support order] never happened. Do you understand that?" Tina answered, "Yes." (*Id*. at 6). The magistrate also expressly asked Tina about her attorney's representation. After the agreement had been read, the magistrate addressed Tina

---

[4] This amendment reflects an acknowledgment that there was no effective support order to increase, thus a motion to establish support was necessary.

[5] If the February 22, 2008 temporary support order was still in effect, there would be no need to enter another temporary order.

directly. Noting that she had switched attorneys, the magistrate asked Tina if she was satisfied with her attorney's legal representation, if she felt that her attorney had explained everything to her, and if "he has answered all of your questions and you understand the agreement that you're entering into?" (*Id*. at 11). Lastly, the magistrate asked Tina if she was "voluntarily and knowingly entering into this agreement" and if she was "going to sign this agreement and [if] it's the agreement that you want this Court to enforce?" (*Id*.). To each of these questions, Tina answered, "yes."

{¶ 17}  The transcript of the June 2010 hearing shows nothing that suggests Tina did not understand or voluntarily consent to the provisions in the agreed order.[6] Nor does it reveal any confusion or dissatisfaction with the agreement. Even when Tina was addressed by the magistrate directly, she did not mention that what the attorneys were saying about the agreement seemed to be inconsistent with what she believed about it. Accordingly, we agree with the trial court's ultimate conclusion that the Judgment of September 14, 2010 adequately reflects the agreement of the parties.

{¶ 18}  Because the court's judgment entry from which the appellant seeks relief is consistent with proceedings on the record, the domestic relations court did not abuse its discretion by denying her Civ.R. 60(B) relief. The sole assignment of error is overruled.

{¶ 19}  The court's judgment is affirmed.

. . . . . . . . . . . . .

DONOVAN and WELBAUM, JJ., concur.

---

[6] A transcript of the mistake-of-fact hearing is not in the record. In its written decision, the domestic relations court noted that Tina had not filed a transcript of this hearing. The court said that it had listened to a recording of the hearing and that, at the hearing, Tina did not present any evidence but relied solely on the June 2010 hearing transcript.

Copies mailed to:

Herbert Creech
Don A. Little
Pamela L. Pinchot
Hon. Steven L. Hurley